UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

JOY ELIZABETH W.,[1]
      Plaintiff,

v.

ANDREW SAUL, Commissioner
of Social Security,
      Defendant.

NO. EDCV 20-1254-KS

MEMORANDUM OPINION AND ORDER

## INTRODUCTION

Joy Elizabeth W. ("Plaintiff") filed a Complaint on June 22, 2020, seeking review of the denial of her application for a period of disability and disability insurance benefits ("DI"). On July 20, 2020, the parties consented, pursuant to 28 U.S.C. § 636(c), to proceed before the undersigned United States Magistrate Judge. (Dkt. Nos. 11, 12, 14.) On June 17, 2020, the parties filed a Joint Stipulation ("Joint Stip."). (Dkt. No. 23.) Plaintiff seeks an order reversing the Commissioner's decision and awarding benefits, or, in the alternative, remanding for further proceedings. (Joint Stip. at 38.) The Commissioner requests that the ALJ's decision

---

[1]     Partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

1

be affirmed. (*See id*. at 39.) The Court has taken the matter under submission without oral argument.

## SUMMARY OF ADMINISTRATIVE PROCEEDINGS

In January 2017, Plaintiff, who was born on November 23, 1972, filed applications for a period of disability and DI.[2] (*See* Joint Stip. at 2; Administrative Record ("AR") 15, 29, 169.) Plaintiff alleged disability commencing January 3, 2017 due to multiple sclerosis. (AR 182.) Plaintiff previously worked as a telephone sales representative (DOT 299.357-014), instructor (DOT 090.227-010), and donor recruiter (DOT 293.357-010). (AR 28, 55-57, 183.) The Commissioner denied Plaintiff's applications initially (AR 99-102) and on reconsideration (AR 103-07). On May 1, 2019, Administrative Law Judge Deborah Van Vleck (the "ALJ") held a hearing at which Plaintiff, who was represented by counsel, testified as did vocational expert Jennifer Guediri (the "VE"). (AR 35-80.) On July 30, 2019, the ALJ issued an unfavorable decision, denying Plaintiff's application. (AR 15-30.) On April 27, 2020, the Appeals Council denied Plaintiff's request for review. (AR 1-6.)

## SUMMARY OF ADMINISTRATIVE DECISION

The ALJ found that Plaintiff met the insured status requirements of the Social Security Act through December 31, 2019. (AR 17.) The ALJ further found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date of January 3, 2017. (AR 18.) The ALJ determined that Plaintiff had the following severe impairments: "relapsing remitting multiple sclerosis with cognitive disorder." (AR 18.) The ALJ also concluded that Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of any impairments listed in 20 C.F.R. part 404, subpart P, appendix 1 (20

---

[2] Plaintiff was 44 years old on the alleged onset date and was thus defined as a younger individual under agency regulations. *See* 20 C.F.R. § 404.1563(c).

C.F.R. §§ 404.1520(d), 404.1525, 404.1526. (AR 18-19.) In reaching that conclusion, the ALJ noted that she had considered listing 12.02 regarding neurocognitive disorders, listing 11.09 concerning multiple sclerosis, and listings 2.02 and 2.03 concerning visual impairments. (AR 18-21.) The ALJ determined that, during the relevant period, Plaintiff had the residual functional capacity ("RFC") to perform light work[3] with the following additional limitations:

> [Plaintiff] can occasionally climb ramps or stairs but can never climb ladders, ropes, or scaffolds. [Plaintiff] can occasionally balance, stoop, kneel, crouch, and crawl. [Plaintiff] is unable to read ordinary newspaper or book print, but is capable of avoiding ordinary hazards in the workplace such as boxes and warning signs. [Plaintiff] can never work in the presence of unprotected heights or hazardous machinery, and should not be required to operate a motor vehicle as part of her job duties. [Plaintiff] can never work in the presence of concentrated exposure to dust, odors, fumes, or pulmonary irritants, extreme cold, extreme heat, humidity, or wetness. [Plaintiff] can perform simple and routine tasks, can use judgment for that type of work, and can deal with changes that are consistent with simple work and simple work-related decisions. [Plaintiff] can never work with the public.

(AR 21.)

The ALJ found that Plaintiff was unable to perform her past relevant work as a telephone sales representative (DOT 299.357-014), instructor (DOT 090.227-010), and donor recruiter (DOT 293.357-010). (AR 28.) However, considering Plaintiff's age, education, work

---

[3] "Light work involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds. Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567

3

experience, and residual functional capacity, the ALJ determined that jobs existed in significant numbers in the national economy that Plaintiff could perform, including the representative occupations of "folder, textiles" (DOT 789.687-058), hand filler (DOT 780.687-046), and toy stuffer (DOT 731.685-014)[4]. (AR 29-30.) Therefore, the ALJ concluded that Plaintiff had not been under a disability as defined in the Social Security Act from the alleged onset date of January 3, 2017 through July 30, 2019, the date of the ALJ's decision. (AR 30.)

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether it is free from legal error and supported by substantial evidence in the record as a whole. *Ahearn v. Saul*, 988 F.3d 1111, 1115, 1116 (9th Cir. 2021); *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is "more than a mere scintilla," but less than a preponderance: it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, ___ U.S. ___, 139 S. Ct. 1148, 1154 (2019); *Gutierrez v. Comm'r of Soc. Sec.*, 740 F.3d 519, 522-23 (9th Cir. 2014). "Even when the evidence is susceptible to more than one rational interpretation, we must uphold the ALJ's findings if they are supported by inferences reasonably drawn from the record." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012).

Although this Court cannot substitute its discretion for the Commissioner's, the Court nonetheless "must assess the entire record, weighing the evidence both supporting and detracting from the agency's conclusion." *Ahearn*, 988 F.3d at 1115; *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035 (9th Cir. 2007). "The ALJ is responsible for determining credibility,

---

[4] The ALJ cited the wrong DOT number for the toy stuffer occupation, but the VE gave the correct one in her testimony: DOT 731.685-014. (*Compare* AR 29 *with* AR 78.)

4

resolving conflicts in medical testimony, and for resolving ambiguities." *Ahearn*, 988 F.3d at 1115 (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The Court will uphold the Commissioner's decision when the evidence is susceptible to more than one rational interpretation. *Ahearn*, 988 F.3d at 1115-16; *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). However, the Court may review only the reasons stated by the ALJ in her decision "and may not affirm the ALJ on a ground upon which [s]he did not rely." *Orn*, 495 F.3d at 630; *see also Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003). The Court will not reverse the Commissioner's decision if it is based on harmless error, which exists if the error is "'inconsequential to the ultimate nondisability determination,' or if despite the legal error, 'the agency's path may reasonably be discerned.'" *Brown-Hunter v. Colvin*, 806 F.3d 487, 492 (9th Cir. 2015) (internal citations omitted).

**DISCUSSION**

According to the Joint Stipulation, there is only a single issue in dispute: whether the ALJ properly considered Plaintiff's statements about her symptoms and limitations. (Joint Stip. at 4.)

**I.     Plaintiff's Statements**

Plaintiff completed her initial Disability Report on January 9, 2017 in which she stated that, due to her multiple sclerosis, she experiences severe double vision and can no longer do computer work or write for an extended time. (AR 203.)

In an Exertion Questionnaire completed later that month, on January 30, 2017, Plaintiff wrote that she lives in a house with her husband. (AR 219.) She stated that she suffers from weakness in her arms, dizziness, vertigo, severe headaches, fatigue in the afternoons, and pain

5

all day and night. (AR 219.) She stated that, in an average day, for three to four hours, she can drive and work on a computer and do some writing. (AR 219.) After three to four hours of these types of activities, she becomes so fatigued that she needs to rest. (AR 219.)

Plaintiff wrote that she can walk a quarter-mile with her dogs to keep her body moving. (AR 219.) After that short distance, her legs become "very weak" and she needs to rest. (AR 219.) She wrote that she does not climb stairs. (AR 220.) She estimated that she could lift 20-25 lbs. but does not regularly do so. (AR 220.) She wrote that once or twice a week she carries books weighing less than two pounds and carries them from the parking lot to the inside of the post office and/or library. (AR 220.)

Plaintiff wrote that she does not clean her own home or do any yard work. (AR 220.) She wrote that she does drive a car but only for about 30-45 minutes before she needs to stop and rest her eyes and move her legs. (AR 220.) Plaintiff wrote that she can still fold laundry—but she cannot lift it or take it out of the washing machine or dryer. (AR 221.)

Plaintiff wrote that she sleeps seven to nine hours at night and rests every day around noon, sometimes napping up to four hours. (AR 221.) Plaintiff wrote that she takes rebiff shots three times a week for her multiple sclerosis, prednisone for flare ups, ibuprofen as needed for pain, and Dramamine for dizzy spells. (AR 221.) Plaintiff wrote that she uses a cane or walking stick "occasionally" when she walks long distances or needs to stand in long lines. (AR 221.) Plaintiff added that her multiple sclerosis inhibits her ability to do computer work or reading and that she gets very agitated when she is fatigued. (AR 221.)

More than two years after completing the Exertion Questionnaire, Plaintiff testified at the May 1, 2019 administrative hearing. Plaintiff testified that her multiple sclerosis had always affected her vision but it had become worse in the last two to three years, and, similarly, her migraines, which had also plagued her all her life, had become worse in the last four years.

(AR 59.) She testified that she takes Ocrevus for the multiple sclerosis and Topamax for her migraines. (AR 60.)

Plaintiff testified that she had a valid driver's license but had not driven a car since January or February 2017 after her optic neurologist told her not to drive because of her vision. (AR 43-44.) She explained that her peripheral vision in both eyes is "not good because of [her] optic nerve." (AR 44.)

Plaintiff testified that there are no stairs in, or outside of, her home and that, when alone, she uses a four-pronged cane for stability. (AR 46-47.) Although she purchased the cane independent of any medical recommendations, she testified that her neurologist "said it was good that [she] have it." (AR 46.) She testified that she did not bring the cane to the hearing because she was with her parents and could lean on her mom. (AR 47.) She testified that, since falling approximately four years earlier, she had always relied on either another person or her cane for stability. (AR 47.) When asked if she had problems standing and walking, Plaintiff answered, "Only if there's a lot of people. I just don't want to run into people. I don't want to run into things." (AR 61.) She testified, "I can walk as long as there's not a lot of people around" and, in those conditions, could walk "maybe two" blocks. (AR 62.)

Plaintiff testified that that she could lift maybe five pounds but not for "very long." (AR 63.) She testified that, if she had "something to stand on or stand with," she could stand for two to three minutes before becoming fatigued. (AR 62-63.) She testified that she needs to be able stand and stretch when sitting for long periods, such as the length of the administrative hearing. (AR 63.) However, she also testified that, since January 2017, she had seen some movies in the theaters (AR 66) and had driven with her husband from San Bernardino, California to Las Vegas, Nevada for their anniversary. (AR 66-67; *see also id.* 45 (discussing living in San Bernardino).) They stayed for three days and saw "Face," a mime show, which she enjoyed. (AR 67-68.)

Plaintiff testified that she has some problems with memory. (AR 66, 73.) Plaintiff testified that she had "recently noticed" experiencing difficulty writing her signature and holding a pen. (AR 64.) Plaintiff testified that she went grocery shopping with her parents and did meal preparation. (AR 64.) She testified that her husband did all of the housecleaning. (AR 65.) Plaintiff testified that, if she was not living with her husband, she would live with her parents because she did not like to be alone and "would be afraid." (AR 65.) When asked, if she had to live alone, would she be able to handle housecleaning, laundry, and all of other necessary chores from "a physical standpoint and a mental standpoint," Plaintiff answered, "I would have to, I guess." (AR 65-66.)

Plaintiff testified that she had received six months of unemployment—from January 2017 through June 2017. (AR 50.) She testified that, during that time, she was "physically and mentally able to perform some work and looking for work." (AR 50.) She testified that she also drove for Uber and Lyft until the end of February 2017 when she stopped because of her vision. (AR 54.) The ALJ asked, "I thought you were doing Lyft until September of '17 in the medical evidence . . . So is it possible the driving went on later than February?" (AR 55.) Plaintiff responded, "Maybe. I don't know the dates. Is that what it says?" (AR 55.)

Plaintiff also testified that, after her unemployment ended, in June 2017, she continued to look for work. (AR 52.) She testified, "I would like to work . . . I would like teaching, but I can't work on a computer anymore." (AR 52.) She added that she is also unable to read printed material because she "can't see it." (AR 52.) She later testified that she could read "big font," like the big letter on the top of the eye chart. (AR 61.)

When asked what she does during an average day, Plaintiff testified that she sits with her dad in the car while her mom goes to the Y to exercise and then sometimes her dad takes her to apply to jobs. (AR 72.) She said that no one ever hires her and that she is sometimes told that she is too educated or that she would have to stand too long. (AR 72.)

8

When asked why she filed her application in January 2017, Plaintiff answered, "Because I just wasn't able to find another job teaching." (AR 73.) Plaintiff added that she had experienced difficulty standing during her last year of teaching in addition to difficulty looking at the computer. (AR 74.) She added that she did not have a problem talking on the phone as a donor recruiter "[b]ut there for a while, I couldn't even get a talking job." (AR 74.)

## II. Applicable Law

An ALJ must make two findings before discounting a claimant's statements regarding the severity and persistence of her symptoms. *See Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1036). "Second, if the claimant has produced that evidence, and the ALJ has not determined that the claimant is malingering, the ALJ must provide specific, clear and convincing reasons for rejecting the claimant's testimony regarding the severity of the claimant's symptoms" and those reasons must be supported by substantial evidence in the record. *Id.*; *see also Marsh v. Colvin*, 792 F.3d 1170, 1174 n.2 (9th Cir. 2015); *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008). The ALJ must specifically identify "what testimony is not credible and what evidence undermines the claimant's complaints." *Parra v. Astrue*, 481 F.3d 742, 750 (9th Cir. 2007) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015) (finding legal error where the ALJ "failed to identify the testimony she found not credible"); *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996) ("The ALJ must state specifically which symptom testimony is not credible and what facts in the record lead to that conclusion.").

In March 2016, the Commissioner promulgated Social Security Ruling ("SSR") 16-3p, 2017 WL 5180304, which "makes clear what [Ninth Circuit] precedent already required: that

assessments of an individual's testimony by an ALJ are designed to 'evaluate the intensity and persistence of symptoms' . . . and not to delve into wide ranging scrutiny of the claimant's character and apparent truthfulness." *Trevizo v. Berryhill*, 871 F.3d 664, 678 n.5 (9th Cir. 2017). Under SSR 16-3p, the ALJ shall determine whether to credit a claimant's statements about her pain and limitations by referring to the factors set forth in 20 C.F.R. § 404.1529(c)(3), which include: the claimant's daily activities; the factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication taken to alleviate the symptoms; the claimant's treatment, other than medication, for the symptoms; any other measure that the individual uses to relieve pain or other symptoms; and, finally, "any other factors concerning an individual's functional limitations and restrictions." SSR 16-3p. However, the lack of objective medical evidence supporting a claimant's allegations cannot provide the sole basis for rejecting his statements about the severity of his symptoms and limitations. *Id.*; *see also Trevizo*, 871 F.3d at 679; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2) ("we will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have on your ability to work solely because the available objective medical evidence does not substantiate your statements").

### III. ALJ's Decision

The ALJ determined that Plaintiff's medically determinable impairments could reasonably be expected to cause the alleged symptoms but found that Plaintiff's statements concerning the intensity, persistence, and limiting effects of those symptoms were not entirely consistent with the medical evidence and other evidence in the record. (AR 22.) The ALJ cited two reasons for discounting many of Plaintiff's subjective complaints: (1) the complaints were not supported by the objective medical evidence; and (2) Plaintiff's activities contradicted many of her complaints.

With regards to the first reason, the ALJ observed that the medical evidence showed that Plaintiff's multiple sclerosis developed into a relapsing/remitting symptom pattern, with a 2011 relapse (involving weakness and numbness of the right hand), and a 2012 relapse (involving diplopia—also known as double vision). (AR 23.) However, the ALJ found that the medical evidence did not show that Plaintiff suffered a debilitating relapse in or around the alleged onset date and remained in a debilitated condition throughout the alleged period of disability. Specifically, the ALJ pointed to treatment notes from January 2017, the month of Plaintiff's alleged onset date, that indicated that Plaintiff's multiple sclerosis had remained "fairly stable"—without any recent relapse—and Plaintiff described her symptoms as "tolerable." (AR 23) (citing Ex. 1F/2). The ALJ added that notes from a December 2018 checkup one year later showed that Plaintiff reported feeling "great" and that her migraines were no longer a problem. (AR 23) (citing Ex. 7F/1). At the same visit, Plaintiff's mother stated that Plaintiff was "doing much better than 1 year ago." (AR 23) (citing Ex. 7F/1).

The ALJ noted a similar dearth of objective medical evidence supporting Plaintiff's allegations of a significant and sudden exacerbation of her vision problems in or around January 2017. The ALJ explained that an eye examination conducted in January 2017 determined that Plaintiff retained 20/20 corrected vision bilaterally (AR 23) (citing Ex. 3F/3) and an evaluation conducted six months later in July 2017 showed no sign of double vision and no need for eye treatment (AR 23) (citing Ex. 5F/1, 3). Further, in May 2018, Plaintiff's vision testing resulted in a diagnosis of optic nerve atrophy but with no prescribed treatment beyond reading glasses. (AR 23) (citing Ex. 8F/43). The ALJ added that, in a July 2018 visit with Parkside Medical Group, Plaintiff reported seeing "pretty well" with glasses and having regained the ability to read and operate a computer. (AR 23) (citing Ex. 7F/3).

The ALJ also noted that there were was no objective medical evidence that supported Plaintiff's allegations that she experienced a significant decrease in her lifting capacity between January 2017, when she said she could lift 20-25 pounds, and the administrative

hearing nearly two and a half years later when she alleged that she could lift no more than five pounds. (AR 25.) For all of the foregoing reasons, the ALJ concluded that the objective medical evidence did not support Plaintiff's allegations that she endured significant symptom exacerbation lasting longer than twelve months during the relevant period. (AR 24.)

The ALJ's second reason for declining to credit Plaintiff's allegations about the intensity and limiting effects of her condition was that Plaintiff's activities suggested a lesser degree of limitation than what she alleged. (*See* AR 25.) Specifically, the ALJ noted that Plaintiff testified that she had certified herself as capable of working in connection with her receipt of unemployment benefits for the six months after her alleged onset date. (AR 25.) Additionally, the ALJ observed contradictions between Plaintiff's testimony about when she stopped working and driving due to her visual impairment and Plaintiff's statements to her medical providers about her work as a Lyft driver. (AR 25) (citing Ex. 7F/12). Finally, the ALJ noted that, in her December 2018 visit to Parkside Medical Group, Plaintiff reported actively looking for a part-time job. (AR 25) (citing Ex. 7F/1).

## IV. Discussion

Plaintiff contends that the ALJ failed to offer a "legally sufficient rationale" for declining to credit Plaintiff's allegations and based her decision solely on the inconsistency between the objective evidence of record and Plaintiff's allegations. (Joint Stip. at 9-10.) Plaintiff further asserts that the ALJ failed to specifically identify the testimony that she found inconsistent with the objective medical evidence. (*See* Joint Stip. at 10 ("ALJ nowhere connects any of Wheaton's testimony to the ALJ's analysis").) Finally, Plaintiff contends that the ALJ improperly relied on Plaintiff's activities to discount her statements about her symptoms because Plaintiff's activities neither contradict her testimony or demonstrate an ability to spend a substantial part of the day doing activities transferable to a work setting.

12

(Joint Stip. at 13) (citing *Orn*, 495 F.3d at 639). The Court considers each of Plaintiff's contentions in turn.

First, Plaintiff mischaracterizes the ALJ's discussion of the inconsistencies between Plaintiff's allegations about the intensity, persistence, and limiting effects of her symptoms, the objective medical evidence, and her own activities. Rather than relying on boilerplate language, the ALJ dived into the medical records and identified particular treatment notes that contradicted specific allegations Plaintiff made about the sudden onset of a debilitating vision impairment—and an equally sudden exacerbation of her multiple sclerosis symptoms—in January 2017 as well as the lack of any specific treatment notes documenting Plaintiff's alleged significant decrease in strength during the relevant period. (*See, e.g.,* AR 23-24.) Additionally, the ALJ's characterization of these records is accurate and, therefore, her conclusion—that many of Plaintiff's allegations were not supported by objective medical evidence—is supported by substantial evidence.

Second, contrary to Plaintiff's position, the ALJ did not rely solely on the medical evidence in discounting Plaintiff's subjective symptom testimony. Instead, the ALJ pointed to specific inconsistencies between Plaintiff's testimony about the intensity and limiting effects of her impairment and her activities. For example, Plaintiff testified that she stopped working because she could not read, use computers, or stand for long periods (AR 52) and, around the same time, was told she could not drive (AR 43-44). However, Plaintiff's allegations of symptoms that prevented her from driving are contradicted by her statements to medical providers throughout the relevant period that she was driving for Lyft. (*See, e.g,* AR 293, 318 (May 2017 – Plaintiff reports driving for Lyft or Uber), 314 (Plaintiff reported driving for Lyft from time to time).) Additionally, at a July 2018 appointment, Plaintiff stated that she was going to have a driving test the following month. (AR 305.)

Plaintiff also testified that she had difficulty sitting for long periods, such as the length of the administrative hearing (AR 63), but she continued to drive for Lyft—an activity that is performed while sitting, sometimes for long periods—but also performed multiple activities during the relevant period that required her to sit for periods significantly longer than the length of the administrative hearing. In particular, Plaintiff reported doing all of the following: watching movies in the theater, which typically last for more than an hour and a half each; making the approximately four hour drive between San Bernardino and Las Vegas for an anniversary trip with her husband; and "enjoy[ing]" a live show in Las Vegas. (AR 66-68.) Plaintiff also testified that, in an average day, she sat with her father in the car for the time it took for her mother to work out at the YMCA. (AR 72.)

Finally, despite Plaintiff's insistence that her symptoms were so debilitating as to render her unable to work, she certified herself as physically capable of working for six months following her alleged onset date. (AR 50); *see also Ghanim v. Colvin*, 763 F.3d 1154, 1165 (9th Cir. 2014) ("Continued receipt of unemployment benefits does cast doubt on a claim of disability, as it shows that an applicant holds himself out as capable of working."); *Carmickle v. Comm'r, Soc. Sec. Admin.*, 533 F.3d 1155, 1161-62 (9th Cir. 2008) (receipt of unemployment benefits undermines a claimant's alleged inability to work fulltime where the claimant held herself out as available for full-time work). She also continued to look and apply for jobs following her alleged onset date and right up to the date of the administrative hearing. (AR 52, 72.)

As Plaintiff points out, an ALJ may use a plaintiff's activities as a basis for rejecting the plaintiff's statements about the intensity, persistence, and/or limiting effects of her symptoms if they "contradict [her] other testimony" or "meet the threshold for transferable work skills." (Joint Stip. at 13); *see also Orn*, 495 F.3d at 639. Here, however, as described above, Plaintiff reported engaging in several activities that contradicted her testimony about her limitations. These activities included driving for Lyft, engaging in recreational activities that required her

to sit for periods longer than the administrative hearing, and both certifying herself as able to work and continuing to apply for jobs during the relevant period. Therefore, the ALJ did not err in citing these activities as a basis for discounting significant portions of Plaintiff's testimony, *cf. Orn*, 495 F.3d at 639, and the Court finds no error with the ALJ's assessment of Plaintiff's statements about the severity, persistence, and limiting effects of her symptoms and conditions. The ALJ's decision must be AFFIRMED.

## CONCLUSION

For the reasons stated above, the Court finds that the Commissioner's decision is supported by substantial evidence and free from material legal error. Neither reversal of the ALJ's decision nor remand is warranted.

Accordingly, IT IS ORDERED that Judgment shall be entered affirming the decision of the Commissioner of the Social Security Administration.

IT IS FURTHER ORDERED that the Clerk of the Court shall serve copies of this Memorandum Opinion and Order and the Judgment on counsel for plaintiff and for defendant.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATE: June 28, 2021

_____
KAREN L. STEVENSON
UNITED STATES MAGISTRATE JUDGE